UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FAIYAZ H. SABA,<br><br>        Plaintiff,<br><br>    vs.<br><br>MITCHEL H. CAPLAN, et al.,<br><br>        Defendants. | Case No: C 10-02113 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>[Docket Nos. 17, 18] |

On May 18, 2010, Plaintiff commenced the instant action against All California Mortgage ("ACM"), E*Trade Wholesale Lending Corp ("E*Trade"), and Mitchel H. Caplan, the President and CEO of E*Trade's parent company, alleging that Plaintiff was defrauded in connection with the refinancing of his home. The parties are presently before the Court on Plaintiff's Motion for Temporary Restraining Order (Docket No. 17).[1] By his motion, Plaintiff seeks to enjoin the non-judicial foreclosure sale of his home, which is scheduled for July 6, 2010. Having read and considered the papers submitted in connection with this matter, the Court hereby DENIES the motion for the reasons that follow. Pursuant to Federal Rule of Civil Procedure 78(b), the Court adjudicates the instant motion without oral argument.

I.      **BACKGROUND**

   A.   **FACTUAL SUMMARY**

Plaintiff is the owner of a home located in Fremont, California. In 2006, Plaintiff retained ACM as his mortgage broker for the purpose of refinancing his existing mortgage. He received a loan from E*Trade. Plaintiff subsequently defaulted on his mortgage, resulting in a

---

[1] Plaintiff also filed an Ex Parte Application for a hearing on his motion on or before Friday, July 2, 2010. (Docket No. 18.)

1  Notice of Default and Election to Sell Under Deed of Trust being recorded against his property
2  on July 14, 2009, by ETS Services, LLC ("ETS") as trustee for E*Trade. At that time, Plaintiff
3  was in arrears in the amount of $26,256.83. On October 14, 2009, ETS recorded a Notice of
4  Trustee's Sale, which scheduled a sale date of November 9, 2009. At the time Plaintiff filed
5  his complaint, the sale had been continued to May 27, 2010. (Compl. ¶ 91.) Plaintiff
6  represents that the sale date again has been continued to July 6, 2010.

### B. PROCEDURAL HISTORY

Plaintiff filed the instant action on May 18, 2010. The Complaint alleges causes of action against Defendants for: violation of Racketeer Influenced and Corrupt Organizations Act ("RICO") (first cause of action); violations of the Truth in Lending Act ("TILA") (second cause of action); violations of California Business & Professions Code section 17500 (third cause of action); violations of California Business & Professions Code section 17200 (fourth cause of action); breach of implied covenant of good faith and fair dealing (fifth cause of action); and Preliminary and Permanent Relief to set aside trustee's sale date (sixth cause of action). This matter was originally assigned to Magistrate Judge Joseph C. Spero, and was subsequently reassigned to this Court on July 2, 2010.

On July 1, 2010, Plaintiff filed a Motion for Temporary Restraining Order to enjoin the foreclosure sale, which is now scheduled for July 6, 2010, and an Ex Parte Application for a hearing on that motion on or before Friday, July 2, 2010. Along with his motion, Plaintiff also filed a Certificate of Service representing that he served counsel for ACM, E*Trade, and Mr. Caplan by filing the motion using the ECF electronic filing system. However, at the time Plaintiff filed his motion, counsel for E*Trade and Mr. Caplan had not yet registered through the ECF system as counsel in this matter. Therefore, counsel could not have received e-mail

1 service through the ECF system, rendering Plaintiff's attempt to serve those Defendants
2 through the ECF system ineffective.[2]

## II. LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., --- U.S. ---, ---, 129 S.Ct. 365, 376 (2008).[3] A party seeking injunctive relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 651 (9th Cir. 2009) (quoting Winter, 129 S.Ct. at 374). The issuance of an injunction is committed to the discretion of the district court. Id.

Plaintiff erroneously relies on the Ninth Circuit's pre-Winter alternative "sliding-scale" test under which an injunction may be granted where the plaintiff "demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." Save Our Sonoran, Inc., v. Flowers, 408 F.3d 1113, 1120 (9th Cir. 2005). In light of Winter, the Ninth Circuit has abandoned that test. National Meat Ass'n v. Brown, 599 F.3d 1093, 1097, n. 3 (9th Cir. 2010) (district court erred in applying the pre-Winter sliding-scale test); Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (same).

Moreover, under Federal Rule of Civil Procedure 65(b)(1), for a court to issue a temporary restraining order ("TRO") without notice to the adverse party, the TRO motion must be based on an affidavit or a verified complaint.

---

[2] Service of electronically filed documents through the ECF system is governed by General Order No. 45, Electronic Case Filing Guidelines, Section IX(B), which provides that "[t]he automatic e-mail message generated by the ECF system and sent to all parties whose e-mail addresses have been registered in the case … shall constitute service on the attorney or other persons in a case subject to ECF." (Emphasis added.)

[3] The standard for relief applicable to a temporary restraining order is the same as for a preliminary injunction. See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

## III. DISCUSSION

### A. PLAINTIFF HAS NOT MET THE PROCEDURAL REQUIREMENTS OF RULE 65(B)(1)

As indicated above, Plaintiff did not effectuate service on Defendants E*Trade and Mr. Caplan because counsel for those defendants had not yet appeared in this case, and therefore could not have received electronic notification through the ECF system. Plaintiff has not indicated that he attempted service on Defendants through any other means. Therefore, Plaintiff's TRO motion must be supported by an affidavit or a verified complaint. Fed.R.Civ.P. 65(b)(1). Here, Plaintiff has provided neither an affidavit nor a verified complaint. Rather, Plaintiff relies solely on his unverified complaint. Therefore, under these circumstances, issuance of a TRO is not proper pursuant to Rule 65(b)(1).

Even had Plaintiff satisfied the requirements of Rule 65(b)(1), Plaintiff has not shown that an injunction is warranted. Specifically, as explained below, Plaintiff has not shown that he is likely to succeed on the merits, that the balance of equities tips in Plaintiff's favor, or that the public will benefit from the proposed injunction.

### B. LIKELIHOOD OF SUCCESS ON THE MERITS

#### 1. RICO

Plaintiff's first claim alleges that Defendants violated RICO. "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation and internal quotation marks omitted). Based on the Court's review of the pleadings, it is apparent that Plaintiff's RICO claim is incognizable on multiple levels.

First, Plaintiff fails to properly plead an enterprise. An "enterprise" for purposes of RICO is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Under this definition, an enterprise can be a single individual, partnership, corporation, association, or other legal entity. Odom v. Microsoft Corp., 486 F.3d 541, 548

(9th Cir. 2007) (en banc). The type of enterprise alleged here is an "associated-in-fact enterprise." (See Compl. ¶ 52 ("Defendants created a common enterprise and course of fraudulent conduct, the purpose of which is and was to procure as many subprime mortgages as possible . . . .").) The Supreme Court has defined an associated-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). "To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" Odom, 486 F.3d at 552 (quoting Turkette, 452 U.S. at 583). Here, Plaintiff's conclusory allegations omit the requisite facts to show the existence of an ongoing associated-in-fact enterprise.

Second, Plaintiff fails to adequately allege a pattern of racketeering activity. In order to satisfy this requirement, a plaintiff must allege at least two predicate acts that are related and that "amount to, or otherwise constitute a threat of continuing, racketeering activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989). "The Ninth Circuit has held that allegations of predicate acts under RICO must comply with Rule 9(b)'s specificity requirements." U.S. Concord, Inc. v. Harris Graphics Corp., 757 F. Supp. 1053, 1061 (N.D. Cal. 1991) (citing Schreiber Distrib. Co. v. ServWell Furniture Co., 806 F.2d 1393, 1400-01) (9th Cir. 1986)). Ignoring this requirement, Plaintiff merely alleges that Defendants engaged in fraudulent practices "by internet, telephone, and cable wire, and by United States Post or other mail carrier." (Id. ¶ 51.) Such vague allegations fail to satisfy the heightened pleading requirements of Rule 9(b). Given these deficiencies, Plaintiff has failed to show a likelihood of success on his RICO claim.

### 2. TILA

Plaintiff's second claim asserts that Defendants violated TILA by allegedly failing to "disclose the actual interest rates of Plaintiff's loans, because Plaintiff's loans were adjustable." (Compl. ¶ 61.) He also avers that Defendants failed to disclose "that the 'teaser rate' of the ARM [Adjustable Rate Mortgage] is discounted and will not be the rate for the remainder of the loans." (Id. ¶ 62.)

"Congress enacted TILA 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir. 2009) (quoting 15 U.S.C. § 1601). A TILA violation may give rise to a claim for rescission and/or damages. 15 U.S.C. §§ 1635, 1640.

Plaintiff is unlikely to prevail on his TILA claim. First, it appears that Plaintiff's claims are time-barred. At the latest, a claim for rescission under TILA must be brought within three years of the date the loan was consummated. 15 U.S.C. § 1635(f). The limitations period to recover damages under TILA is one-year. 15 U.S.C. § 1640(e). The loan at issue in this case closed on or about October 23, 2006. (Compl. ¶ 9.) However, Plaintiff did not file suit until May 18, 2010, well over three years after consummating the loan transaction. Moreover, Plaintiff's rescission claim fails because he has not alleged his willingness or ability to tender amounts owed under loan. See Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003). The Court finds that Plaintiff has failed to demonstrate a likelihood of success on his claim under TILA.

### 3. FAL

Plaintiff's third cause of action alleges that Defendants violated California's False Advertising Law ("FAL"), Cal. Bus.& Prof. Code § 17500. The FAL makes it unlawful to make or disseminate any statement concerning property or services that is "untrue or misleading . . . ." Id. § 17500. A FAL claim "must state with reasonable particularity the facts supporting the statutory elements of the violation." Khoury v. Maly's of Calif., Inc., 14 Cal.App.4th 612, 619 (1993); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (claims that "sound in fraud" or are "grounded in fraud" subject to Rule 9(b)). This means that the pleadings must allege "the who, what, when, where, and how" of the alleged fraudulent conduct. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). Where multiple defendants are involved, the plaintiff also must identify the role of each defendant in the alleged fraudulent scheme. See Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).

In his complaint, Plaintiff alleges that Defendants made "untrue or misleading statements" in order to induce him and others to "enter into mortgages loans . . . secured by their primary residences …. (Coml. ¶ 66.) Plaintiff's description of those statements is limited to the following: statements that E*Trade and ACM were "mortgage loan expert[s]" that "could be trusted to guide [Plaintiff] to obtain mortgage loans that were appropriate to his financial circumstances"; statements regarding the terms and payment obligations of loans offered by E*Trade; and statements that Plaintiff "would be able to refinance again before the interest rate reset, when in fact they (*sic*) most likely could not." (Id.) However, Plaintiff does not specify where or when the allegedly false or misleading statements were made nor does he specify each Defendant's role in the alleged misrepresentations.

But even if Plaintiff had alleged sufficient facts consistent with Rule 9(b), his FAL claim is untimely. All of the alleged misstatements were made for the purpose of inducing Plaintiff to refinance his property. (Compl. ¶ 70.) A FAL claim is subject to a three-year statute of limitations. Cal.Code Civ. Proc. § 338(a). Because the alleged misrepresentations necessarily were made at or prior to the consummation of the loan on October 23, 2006, Plaintiff's FAL claim is time-barred.

### 4.     UCL

Plaintiff's fourth claim alleges that Defendants violated California's Unfair Competition Law ("UCL"), which makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL is subject to the heightened pleading requirements of Rule 9(b). See Kearns, 567 F.3d at 1125 ("We have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the ... UCL"). Like his FAL claim, Plaintiff alleges his claim under the UCL in vague and conclusory terms. Thus, Plaintiff has failed to demonstrate a likelihood of success of such claim as well.

### C.     IRREPARABLE HARM

The loss of one's home through foreclosure generally is considered sufficient to establish irreparable harm. Gonzalez v. Wells Fargo Bank, 2009 WL 3572118 at *3 (N.D. Cal., Oct. 30, 2009) ("The possible irreparable harm that [plaintiff] would suffer if his home is

1  sold at foreclosure is obviously high."); Mesde v. Am. Brokers Conduit, 2009 WL 1883706 at
2  *2 (N.D. Cal., June 30, 2009) (holding that foreclosure constitutes irreparable harm when the
3  lender did not offer the borrower any alternatives to foreclosure); see also Sundance Land
4  Corp. v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 661-62 (9th Cir. 1988) (no
5  adequate remedy at law because of the unique nature of real property).
6        Although the foreclosure of Plaintiff's home may result in irreparable harm, the Court
7  finds that enjoining the foreclosure is not warranted, given the marginal likelihood that Plaintiff
8  will succeed on any of his claims.  See Amodo v. Homeq Serv. Corp., 2010 WL 347730 at *2
9  (E.D. Cal., Jan. 22, 2010) (denying TRO to enjoin foreclosure where plaintiff's TILA and
10 RESPA claims were not likely to succeed); Gonzalez, 2009 WL 3572118 at *7 (denying
11 motion for preliminary injunction to enjoin foreclosure sale where plaintiff's probability of
12 succeeding "is so low, that even though [plaintiff] would suffer irreparable harm, he has not
13 met the standard for the granting of a preliminary injunction"); Mesde, 2009 WL 1883706 at
14 *2 (same).
15       **D.   BALANCE OF EQUITIES AND PUBLIC INTEREST**
16       The final two inquiries germane to an analysis of a TRO request are whether the balance
17 of equities tips in Plaintiff's favor and whether the public will benefit from the proposed
18 injunction.  These factors may be viewed together.  See Independent Living Ctr. of S. Cal., Inc.
19 v. Maxwell-Jolly, 572 F.3d 644, 657-58 (9th Cir. 2009).  As discussed above, the potential loss
20 of Plaintiff's home through foreclosure generally presents a hardship that weighs in his favor.
21 However, in the instant case, the equities that might otherwise favor Plaintiff are significantly
22 counterbalanced by his ostensibly conscious decision to delay until the eve of the foreclosure
23 sale to seek a TRO.
24       At the time Plaintiff commenced this action on May 18, 2010, the trustee's sale had been
25 continued from November 9, 2009 to May 27, 2010.  (Compl. ¶ 91.)  That deadline was again
26 delayed until Tuesday, July 6, 2010.  Though Plaintiff had significant advance notice of the
27 impending foreclosure sale of his property, he waited until Thursday, July 1, 2010,
28 immediately prior to the July 4th holiday weekend, to file his request, and he made that filing

1  without proper notice to the opposing parties.  His lack of notice, coupled with the fact that
2  Defendants' counsel were operating with reduced staff on Friday, July 2, 2010 due to the
3  upcoming holiday, effectively deprived Defendants of their right to be heard in opposition to
4  Plaintiff's TRO request.
5       Compounding this was the timing of Plaintiff's ostensible decision to decline the
6  jurisdiction of the Magistrate Judge.  On June 4, 2010, Plaintiff consented to jurisdiction of the
7  Magistrate Judge.  Given all parties' consent, the Clerk issued a Notice Regarding Consent to
8  the Jurisdiction of United States Magistrate Judge on June 25, 2010, which gave the parties a
9  deadline of seven calendar days (i.e., until July 1, 2010) to sign and file a consent or
10 declination form.  (Docket No. 15.)  That Notice further explained that if the parties did not
11 consent, the case would be randomly assigned to a District Judge.  (Id.)  This matter was
12 reassigned to this Court on July 2, 2010, after all parties, including Plaintiff, failed to respond
13 the Notice.  As such, Plaintiff was well aware that this case would be reassigned on or after
14 July 2, 2010.  Yet Plaintiff waited until July 1, 2010 to file this motion, effectively allowing
15 this Court one business day to consider his motion.
16      Put simply, Plaintiff's dilatory filing of this motion militates against granting the relief
17 he requests.  See Gomez v. U.S. Dist. Court for N. Dist. of Calif., 503 U.S. 653, 653-54 (1992)
18 (court may consider "last-minute attempts to manipulate the judicial process" in deciding
19 whether to grant equitable relief) (per curiam).  Any hardship facing Plaintiff is thus of his own
20 making.

21 **IV.   CONCLUSION**
22      For the reasons stated above,
23      IT IS HEREBY ORDERED THAT Plaintiff's Motion for Temporary Restraining Order
24 is DENIED, and Plaintiff's Ex Parte Application for a hearing on the motion on or before July
25 2, 2010 is DENIED as MOOT because this Court has adjudicated this matter without a hearing.
26      This Order terminates Docket Nos. 17 and 18.
27      IT IS SO ORDERED.
28 ///

| | |
|---|---|
| 1 | Dated: July 6, 2010 |
| 2 | |
| 3 | |

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge